## SMITH v. BRIGGS.

No. 11228.

Court of Civil Appeals of Texas. San Antonio.

Jan. 20, 1943.

Rehearing Denied Feb. 17, 1943.

Adams & Morgan, of Crockett, for appellant.

Eskridge & Groce, of San Antonio, and Strickland, Ewers & Wilkins, of Mission, for appellee.

NORVELL, Justice.

This is a case of garnishment after judgment. Appellee, R. W. Briggs, is the judgment creditor and F. A. Smith, commonly referred to in the briefs as Albert Smith, is the judgment debtor. Briggs secured his judgment in the 37th District Court of Bexar County, Texas, on December 10, 1937 (see Smith v. Briggs, Tex. Civ.App., 131 S.W.2d 319), and filed an application for garnishment in the same court on June 6, 1941. Plaza Company, a corporation, was designated as garnishee, it being alleged inter alia that Albert Smith was the owner of certain shares of the capital stock of said Plaza Company, although "such shares or interest may be in the name of L. P. Atmar."

Plaza Company impleaded L. P. Atmar, Albert Smith and Frank Smith, a son of Albert Smith, alleging that L. P. Atmar was a stockholder of record of said Plaza Company, holding in his name 310 shares of no par value common stock and 310 shares of $50 par value 5% preferred stock of the corporation, and that Frank Smith was claiming ownership thereof.

Atmar disclaimed ownership of the stock standing in his name and pleaded that the certificates representing said stock interest had been endorsed by him in blank and delivered to Albert Smith. Albert Smith also disclaimed, and Frank Smith by appropriate pleadings asserted ownership of the stock involved.

The issues made by the pleadings were tried to the court without a jury. Judgment was entered for Briggs, establishing and foreclosing a garnishment lien against the shares of stock involved. Frank Smith has appealed.

Appellant has predicated his appeal upon twenty points, but, under the view we take of the case, it is unnecessary for us to discuss these points in detail. There is but one matter of substance presented and that relates to the trial court's action in admitting in evidence certain testimony of the party and witness L. P. Atmar.

It appears that on or about December 12, 1927, Albert Smith was the owner of 310 shares of preferred stock of Smith Brothers Properties, a corporation. On February 15, 1932, these shares were transferred on the records of the corporation to Mrs. Rosetta Smith, the wife of Albert Smith and the stepmother of Frank Smith. The certificates of Smith Brothers Properties Company stock issued to Mrs. Rosetta Smith were introduced in evidence and all bear the following endorsement:

"For value received, I hereby assign and transfer unto L. P. Atmar ——— (number of shares covered by the particular certificate) shares of the Preferred Stock represented by the within Certificate, and do hereby irrevocably constitute

and appoint ———— to transfer the said stock on the books of the within named Corporation with full power of substitution in the premises.

"Dated Feb. 20, 1932
    "(Signed)    Mrs. Rosetta Smith
"In presence of
"(Signed) F. A. Smith"

Albert Smith testified that his wife purchased this stock from him in 1932 for $2,500, which was paid to him in cash "taken from a little safe she had." (Frank Smith claims by purchase from Mrs. Rosetta Smith in 1937 or 1938, for $2,500, also paid in cash which he got out of his safe in his office.)

In 1937, the Plaza Company was organized to take over the assets of Smith Brothers Properties Company. For each share of preferred stock in Smith Brothers Properties Company the holder received one share of Plaza Company $50 par value 5% preferred stock and one share of no par value common stock.

On July 1, 1937, 310 shares of the preferred and 310 shares of the common stock of the Plaza Company were issued to L. P. Atmar. The certificates representing these shares were endorsed by Atmar in blank on July 20, 1937, in the presence of F. A. (Albert) Smith, whose signature appears on the endorsement as a witness.

Atmar testified that he had known Albert Smith for some fifty years and rather intimately for twenty-five years. When questioned about the Plaza Company stock, Atmar testified as follows:

"It seems to me this stock was a dividend from some other stock that was standing in my name. I don't remember the company. And I believe we had to to send the other stock in, I think it was to the National Bank of Commerce or to some trustee or trust officer in that institution in order to get this stock issued. This was kind of a dividend, from my understanding, from the other stock issued, whatever it was.

"Q. Did you have any conversations with reference to this stock with Mr. Albert Smith? A. Well, he had me to have this stock issued, and when it came back I held it over until he came in and I endorsed it and handed it over to him. * * *

"Q. State whether or not he made any statements to you with reference to the ownership of that stock. * * * A. He stated it was his stock and he wanted me to carry it in my name for him.

"Q. Did he give you any reason as to why he wanted it carried in your name? A. I don't remember at that particular time the conversation on that line.

"Q. Well, did he at that time or any other time with reference to this or any other stock make any statements as to wanting you to hold stock in your name that belonged to him? A. Yes.

"Q. What was the conversation? * * * A. He told me he didn't owe any money to anybody but that he had signed some guaranty on a bond issue at San Antonio, guaranteeing the interests of Smith Brothers, and that they were attempting to hold him responsible for the deficiency of the payment of the bond interest, and that he didn't feel that he ought to have to pay it, and he didn't want to leave this stuff out so that it was subject to that obligation. * * *

"Q. That former stock you are talking about, did it also stand in your name? A. Yes, sir.

"Q. You were holding that for Mr. Albert Smith? A. Yes, sir."

Appellant objected to the part of Atmar's testimony which "was substantially that F. A. (Albert) Smith told him (Atmar) that the stock belonged to him (Albert Smith), that F. A. (Albert) Smith said he wanted it put in Atmar's name so that it would not be subjected to the payment of bond interest claimed by bond holders, and that L. P. Atmar was holding it for F. A. (Albert) Smith." The particular objection was that "Frank Smith was not bound by any conversation that took place between L. P. Atmar and F. A. (Albert) Smith when Frank Smith was not present."

■ The trial court properly overruled the objection urged. The statements made by Albert Smith to Atmar were not offered as admissions or declarations which would be binding upon Frank Smith. The statements were utterances forming a verbal part of an act which was a material and proper matter for consideration by the trial court in determining an ultimate issue in the case, that of title to the corporate stock involved.

■ It conclusively appears that the Smith Brothers Properties stock had been

endorsed to L. P. Atmar in 1932, also that the Plaza Company stock had been issued to him in 1937. It can not be contended that these circumstances were not pertinent to the issue raised by the pleading. The mere fact that a part of the transactions which ultimately brought about the issuance of the Plaza Company stock in the name of Atmar was verbal, did not bring the same within the bar of the hearsay rule.

 The testimony of Albert Smith as a witness in the case tended to show that he had control of the Smith Brothers Properties Company stock, at least to the extent of directing to whom the new Plaza Company stock should be issued. The testimony of Atmar admitted by the trial court over appellant's objection tended to show that Albert Smith exercised that control and asserted a claim of ownership in and to the stock issued in Atmar's name. "One in possession (or control) of property is presumed to be the owner of it. As making more definite and significant the nature of the person's custody or occupation and as giving it the significance of an exclusive control and a possession in its fullest sense, the acts and declarations of claim of title by the occupant may be decisive, and should therefore be considered for that purpose; without, however, conceding to them any force as hearsay assertions." VI Wigmore on Evidence, 3rd Ed., p. 212, § 1779.

It is further said by Wigmore that: "A special situation arises where the parties opposed are, on the one side, creditors levying upon property, as that of their debtor Doe, and, on the other side, a party claiming the property as belonging to him and not to Doe. * * * When the possessor declarant was the debtor, Doe, his declarations of claim will of course favor the creditor's case, as against the now claimants, and upon the present principle (as a verbal act) ought to be admitted for the creditor. In the case where the claimant sets up a title prior and superior to that of the debtor Doe (as is the case here), the situation is simple; for on no other principle than the present could such declarations by Doe be receivable." VI Wigmore on Evidence, pp. 217, 218, § 1779. See, also, Fellman v. Smith, 20 Tex. 99; First National Bank of Ft. Wayne, Inc. v. Howard, Tex.Civ. App., 174 S.W. 719.

 Most of appellant's remaining points are disposed of under the rule that we must presume that all fact findings having support in the evidence were found in favor of the judgment, as no express findings and conclusions were requested or filed.

[6-7] Appellee had the burden of proving that the stock held in the name of Atmar was in fact the property of Albert Smith. The trial court's holding that appellee discharged this burden has support in the testimony.

 Upon appellant, Frank Smith, lay the burden of proving his title. 20 Tex.Jur. p. 63, § 122. This burden was not discharged as a matter of law. Practically all of the testimony supporting appellant's asserted title came from either Albert or Frank Smith. The trial court was not bound to accept it as true, and we presume the trial court found against appellant upon the issue.

We have considered all of the points raised by appellant in his brief and are of the opinion that no reversible error is disclosed by any of them. They are accordingly overruled, and the judgment of the trial court is in all things affirmed.