**Ila MABERRY**

v.

**FIRST NATIONAL BANK OF LITTLEFIELD, Texas et al.**

No. 7076.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 25, 1961.

Rehearing Denied Nov. 6, 1961.

Dudley D. McCalla, Austin, for appellant.

Potter & Gowdy, and Jerome W. Kirby, Littlefield, for appellees.

DENTON, Chief Justice.

This suit was instituted by the First National Bank of Littlefield against Art E. Davis, J. D. Hagler and appellant Ila Maberry, on a promissory note dated March 9, 1959 in the amount of $2,000 and for the foreclosure of the chattel mortgage executed by Davis of even date, securing the payment of said note. The chattel mortgage pledged certain tire recapping equipment as security for the note. Hagler was the owner of the building which housed the mortgaged property, and by cross action seeks recovery of his landlord's lien under a written rental contract. Mrs. Maberry seeks recovery of the property by virtue of a bill of sale dated April 11, 1959 from one Gordon Allen, and in addition she alleged she was assignee of a chattel mortgage on the same property from a Victoria bank. She further alleged she sold this equipment to Davis on April 11, 1959, and in return received a note and chattel mortgage on the property. The trial court without the intervention of a jury held Hagler's landlord lien was the superior lien; that the Littlefield bank's note and mortgage constituted a second lien, and after the foreclosure and sale of the property the remaining proceeds of the sale, after satisfying the two named liens above, would be awarded to Mrs. Maberry. Findings of fact and conclusions of law were timely filed by the trial court.

Prior to February of 1959, Gordon Allen was the undisputed owner of the tire recapping equipment. The equipment was located at Victoria, Texas, in a building owned by Mrs. Maberry and was sub-

ject to various chattel mortgages held by the Victoria Bank and Trust Company. Although neither Allen nor Art Davis appeared to testify, it is undisputed that Davis went to Victoria on or about February 25, 1959 for the purpose of negotiating for the purchase of the equipment from Allen. Thereafter Davis took possession of the equipment and had it transported to Littlefield. Allen arrived in Littlefield shortly thereafter for the purpose of installing the equipment and instructing Davis and his employees in its operation. There is evidence to support the trial court's finding the Victoria bank, through one of its officers, gave its consent to the removal of the equipment. Lee Hawkins, friend and representative of Mrs. Maberry, had a conversation with Davis in Victoria concerning the purchase, and he was also present at the time the equipment was taken by trucks from the Maberry building and was informed it was being delivered to Davis in Littlefield. The Victoria bank's mortgages were never recorded either in Victoria or Lamb Counties. Allen spent some six weeks in Littlefield supervising the installation of the tire recapping equipment. On March 9, 1959, some 12 days after he brought the equipment to Littlefield, Davis executed the $2,000 note and chattel mortgage to the First National Bank in Littlefield. This mortgage was duly recorded in Lamb County on March 24 of that year.

At the request of Mrs. Maberry, Hawkins made several trips to Littlefield for the initial purpose of collecting $3,600 past-due rent owed to Mrs. Maberry by Allen for the rental on the Victoria building. It became obvious to Hawkins that Allen would be in a position to pay this debt only if and when the equipment was sold. The record further indicates Davis was able to borrow only the $2,000 above referred to. The record is completely silent as to what disposition Davis made of the money. Apparently Hawkins had no knowledge of the note and mortgage executed by Davis to the Littlefield · bank.

Mrs. Maberry purchased the Victoria bank's unrecorded chattel mortgage on April 7; took a bill of sale for the equipment from Gordon Allen on April 11 and on the same date was the payee of a note signed by Davis and his wife for the sum of $7,750 as a purported sales price of the equipment. Testimony referred to a chattel mortgage in favor of Mrs. Maberry which Davis and his wife executed simultaneously with the note, but the mortgage was never introduced into evidence. It is apparent that Mrs. Maberry, acting through Hawkins, entered into the April 7 and April 11 transactions in order to protect her rental claim against Allen.

■ It is appellant's contention the lien held by the First National Bank of Littlefield was invalid and inferior to that held by appellant on the ground there was no evidence and, in the alternative, insufficient evidence to support the trial court's finding that Allen sold the mortgaged equipment to Davis. Appellant takes the position the purported sale was never consummated and therefore Davis had no interest in the equipment at the time he executed the note and mortgage to the Littlefield bank. It is fundamental that a mortgagor must be the owner of the interest mortgaged. Rhea Mortgage Co. v. Lemmerman (Tex.Com.App.) 10 S.W.2d 690; Tips v. Gay (Tex.Civ.App.) 146 S.W. 306.

We must therefore determine whether or not under the existing circumstances Davis had such an interest in the tire recapping equipment to give effect to the bank's mortgage. As we view it, the priority of the various liens is not the real issue. The Littlefield bank's mortgage was taken at a time when no liens were of record in either Victoria or Lamb Counties, and it is undisputed that the Littlefield bank's mortgage was given and recorded prior to the purported purchase and sale by Mrs. Maberry of the equipment in April. She had legal notice of the bank's mortgage at the time she purchased the

Victoria bank's mortgage and also at the time she took the bill of sale from Allen.

■ We must therefore look to the evidence presented to determine Davis' interest at the time he executed the mortgage to the Littlefield bank. It can not be disputed that a sale from Allen to Davis was contemplated and negotiated. Hawkins knew of this from his conversation with Davis in Victoria prior to the time the equipment was taken to Littlefield. The equipment was then placed in the building Davis had previously rented from appellee Hagler. Although Allen spent some six weeks supervising the installation and operation of the equipment, several witnesses testified Davis informed them he had purchased the equipment, and further testimony clearly indicated Davis operated it as his own in connection with his previously established tire business. It is well settled that possession of personal property carries with it the presumption of ownership. Bullard v. Oatman (Tex.Civ. App.) 271 S.W. 422 (no writ history); Sloan v. Sloan (Tex.Civ.App.) 32 S.W.2d 513 (no writ history); Chenoworth v. Flannery (Tex.Civ.App.) 202 S.W.2d 480 (no writ history); Smith v. Briggs (Tex. Civ.App.) 168 S.W.2d 528 (writ refused w. o. m.).

■ Davis' possession of the equipment was required with the knowledge and consent of both Allen and the Victoria bank officers. Mrs. Maberry was informed of Davis' possession almost simultaneously with his taking possession. In addition the testimony supports the trial court's finding that Mrs. Maberry and the Victoria bank were aware of the fact Davis would be required to obtain a loan in order to purchase the equipment. It is undisputed that the Littlefield bank had no knowledge of any other claim against the equipment at the time the note and mortgage were executed by Davis. An examination by the bank of the lien records of Lamb County revealed no such claim. We conclude Davis exercised a degree of possession

and control over the equipment in question so as to acquire such an interest to give effect to the chattel mortgage executed to the Littlefield bank. Having reviewed the evidence presented we are of the opinion the trial court's findings in connection with the sale from Allen to Davis are supported by the evidence and the inferences which can be reasonably drawn therefrom.

■ We are also of the opinion the facts of this case bring it within the provision of Article 6645, Vernon's Ann.Civ. St. as amended. After providing that chattel mortgages shall be filed in the county in which the property shall remain, the Statute further provides:

"* * * and if afterwards the person claiming title under such deed, mortgage, or other writing, shall permit any other person in whose possession such property may be to remove with the same, or any part thereof, out of the county in which the same shall be recorded, and shall not, within four (4) months after such removal, cause the same to be recorded in the county to which such property shall be removed, such deed, mortgage, or other writing for so long as it shall not be recorded in such last-mentioned county, and for so much of the property aforesaid as shall have been removed, shall be void as to all creditors and purchasers thereof for valuable consideration without notice; * * *"

Two basic elements must be present in order to invoke this Statute: (1) the property must be moved from the county in which it was located; (2) the mortgagee must have consented to the removal of the property. Spikes v. Brown, (Tex.Civ. App.) 49 S.W. 725; Thos. Goggan & Bros. v. Synnott (63 Tex.Civ.App. 530) 134 S.W. 1184. All parties agree the equipment was moved from Victoria County to Lamb County. The evidence supports the conclusion the Victoria bank, through one of its officers, gave its consent

to the removal of the equipment to Littlefield.

When Mrs. Maberry purchased the bank's chattel mortgage, she stood in the same position as the Victoria bank. In addition she had actual knowledge of the property's removal. This mortgage was not recorded in Lamb County within the prescribed 4 months after such removal. We therefore conclude Mrs. Maberry's lien as evidenced by the Victoria mortgage is void as to the Littlefield bank's mortgage, who were purchasers of their note and chattel mortgage for valuable consideration without notice of the Victoria lien.

By points 3 and 7, appellant attacks the Hagler landlord lien. She first contends the trial court erred in finding that Hawkins, while acting as Mrs. Maberry's agent, entered into a binding contract with Hagler to the effect that if Hagler would permit the equipment to remain in the building until the various claims had been disposed of, Mrs. Maberry would pay the monthly rental therefor. Although the trial court made such a finding, the judgment as entered for Hagler for the rent due did not impose a personal judgment therefor against Mrs. Maberry. Instead, the judgment gave Hagler a superior lien against the equipment with a foreclosure of the said lien. The judgment specifically provided that no personal judgment should exist against either Mrs. Maberry or Davis. Under such circumstances, appellant can not complain of such finding. Such finding did not cause the rendition of an improper judgment and the error is harmless under Rule 434, Texas Rules of Civil Procedure.

Appellant next attacks Hagler's landlord lien on the ground the trial court erred in finding Mrs. Maberry had notice of Hagler's lease contract on April 11, 1959 because the notice of a contract and past-due rent thereunder was not filed for record by Hagler until April 23, 1960. Davis entered into a written lease contract with Hagler on February 3, 1959 for a period of one year for a rental of $85 per month. This lease contract was not filed of record. Davis paid the monthly rentals through the month of July, 1959. Article 5238, V.A. C.S., gives the landlord a lien on the property of a tenant located in a leased building. All other claimants of interest in the tenant's property are held to have constructive notice of this statutory lien of the landlord. Stoma v. Filgo (Tex.Civ.App.) 26 S.W.2d 1100 (no writ history); Shwiff v. City of Dallas (Tex.Civ.App.) 327 S.W. 2d 598 (refused N.R.E.).

By brief, appellant concedes Hagler is entitled to a superior lien for the last six months' rent due under the lease contract. Hagler complied with Art. 5238 by filing an affidavit securing his landlord's lien on April 23, 1960. No time is prescribed in the Statute within which such an affidavit shall be filed. Industrial State Bank v. Oldham, 148 Tex. 126, 221 S.W.2d 912. The landlord's lien is thus secured even though the affidavit is filed subsequently to the six-month period if it is filed prior to the time other claimants' rights have intervened. Although appellant pleaded that Davis executed a chattel mortgage to her on April 11, 1959, such mortgage was not introduced into evidence and therefore was not considered by the trial court and can not be considered by this Court. Having complied with Art. 5238 by filing the rental affidavit, Hagler clearly protected himself against Maberry's interest in the equipment in question.

We must now consider whether or not Hagler's landlord lien is effective for rent due after the expiration of the lease. Davis apparently abandoned the equipment and building sometime between July 7, 1959 and September 14 of the same year. No rent was paid after July, 1959 and the equipment remained in the building through the end of the rental contract period, February 2, 1960, and it remained in the building at the time of the trial in June, 1960. The court, in General Motors

Acceptance Corp. v. Bettes (Tex.Civ.App.) 57 S.W.2d 263 (writ refused), held a landlord's statutory lien for rents attaches to personal property placed on the premises after the expiration of the lease where the tenant continues to hold over. Here the equipment was placed on the premises during the term of the lease, but the equipment was allowed to remain on the premises long after the expiration of the lease. Once Hagler's lien attached for the six-month period due under the lease contract by filing of the affidavit, we are of the opinion and so hold that a lien also attached to the same property for the period it remained on the premises after the expiration of the lease.

■ Appellant challenges the trial court's finding that the $750 paid to Mrs. Maberry by Art Davis should be credited to the balance due on the notes originally executed to the Victoria bank by Gordon Allen and later assigned to Mrs. Maberry. As we view the record, we think it is clear that Davis' three payments of $250 each were to be applied to the note he executed to Mrs. Maberry on April 11, 1959. This note is in evidence and we fail to find even an inference that these payments were to be applied to the Victoria bank's notes. However, the trial court's error in this respect is harmless in view of our holding of the superiority of the Hagler and Littlefield bank liens, and the absence of a holding in the trial court's judgment carrying out this finding of fact complained of by appellant.

■ The trial court made the further finding that Mrs. Maberry had no mortgage from Davis as against the appellees because such alleged mortgage was not introduced into evidence. Appellant contends this is error in view of the fact the mortgage was attached to appellant's pleadings and it was referred to during the course of the trial. Rule 59, T.R.C.P., permits the attachment of written instruments to the parties' pleadings but neither this Rule nor any other rule we have been able to find provides that such exhibits shall be considered as evidence by the mere attaching the exhibit to the pleadings. It was incumbent upon appellant to offer the alleged mortgage in evidence in order for it to be considered by the trial court.

Although we have not specifically passed on all points brought forward by the appellant, they have all been considered and are hereby overruled. Finding no reversible error, the judgment of the trial court is affirmed.